## No. 12,684.

### STATE OF LOUISIANA VS. RUFFIN WALKER.

A provocation which would not naturally cause instant resentment, but which would have to be thought or brooded over after its commission in order to produce rage or anger is not in contemplation of law a provocation sufficient to reduce an intentional killing from murder to manslaughter.

The use of the words "ordinary man" for "reasonable man" in the charge given by the judge is in no sense prejudicial to the accused.

It frequently happens that a witness contradicts himself for want of a proper application of the questions asked him. Where there is a difference between counsel as to what the answers made *were* the court is authorized to give the witness an opportunity to set himself right. State vs. Wiggins, 45 An. 416.

The District Attorney having propounded to the defendant then on the stand a certain question, his counsel objected that it had been several times asked and answered *in the negative* and should not be asked anew. The District Attorney contended that it had been answered in the *affirmative*. The court overruled the objection, stating "it seemed that this witness has answered this question both ways, and the court will permit the attorney to ask the question again so as to finally determine this matter." Counsel of defendant objected to this statement and reserved a bill on the ground that "it was a comment on the evidence." The court stated to the jury that it was not intended as a comment on the evidence, but merely as a reason for permitting the question to be asked and that they should pay no attention to the statement.

The object of the question propounded by the State was through an affirmative
answer given by the defendant to hold the case down to one of "*murder.*" The
effort was unsuccessful, the jury having returned a verdict of "manslaughter."
*Held,* that while it is the duty of district judges to carefully abstain from any
expression of opinion or comment upon the facts of a criminal case not only in
their charge to the jury, but in their rulings in the presence of the jury upon
the admissibility of evidence, and to avoid, as far as possible, at all times, both
in their language and in their conduct and actions, saying or doing anything
from which the jury might draw any conclusion as to their view of the case
before them the statement of the judge in this particular case furnished no
legal ground for reversal.

APPEAL from the Tenth Judicial District Court for the Parish of
Rapides. *Hunter, J.*

*M. J. Cunningham,* Attorney General, and *Phanor Breazeale,* Dis-
trict Attorney, for Plaintiff, Appellee.

*Julius F. Ariail, Robert P. Hunter* and *John N. Ogden* for Defend-
ant, Appellant.

Argued and submitted January 15, 1898.
Opinion handed down February 21, 1898.

The opinion of the court was delivered by
NICHOLLS, C. J. The defendant, indicted for murder, was con-
victed of manslaughter and sentenced to the penitentiary for eight
years. He has appealed. He relies for reversal upon two bills of
exception. The first bill is as follows:
"The District Judge charged the jury as follows:
"It is essential that the excited and angry condition of the party
committing the act entitling him to a milder consideration of the law
should be superinduced by some insult, provocation or injury which
would instantly produce, in the minds of ordinary men situated as
the prisoner was the highest degree of exasperation," which charge,
read from the written charge of the judge, was objected to because
it required of the accused more than the law demands, in erroneously
restricting him to an instant of time and requiring that the tests
should be applied to him as an "ordinary" man, and that the
provocation should, in order to make the crime manslaughter, have
produced the highest degree of exasperation; and particularly is the

charge erroneous because subsequently, in the written charge, the court, without qualification, instructed the jury as follows: 'The prosecution must be such as would stir the resentment of an ordinary man.' In reference to this bill the court made the following statement: 'This exception is directed at that part of the charge referring to manslaughter. The charge given in this case is taken directly from the criminal law writers and the decisions of our courts, and, taken altogether, the only fault to be found with it, in my opinion, is in its liberality. All the writers lay down the doctrine that the assault or provocation must be such as would stir the resentment of an 'ordinary' man in order to reduce the crime to manslaughter. There must be some standard by which an accused must be judged, and to judge him from the standard of an ordinary man is surely liberal enough. As to the objection directed at the word 'instant,' the court followed the law; and besides this, fully charged the jury in reference to 'cooling time,' etc., as will appear by the charge attached to the bill and made a part thereof. Wharton on Homicide, Secs. 449, 459; Desty, A. C. L. 378, Sec. 128, § 370.''

Defendant's counsel tendered to the judge a bill of exception in which the following recitals were made.

"That during the trial when the defendant was on the stand under caoss-examination by the District Attorney he was asked the following question: 'Did you not anticipate the probable result of calling the deceased Tallie Brown a liar at the time you uttered the words?' to which the counsel for defendant objected, upon the ground that the same question had been propounded and answered by the witness several times. Whereupon his Honor Edwin G. Hunter, in the presence and hearing of the jury, ruled as follows: 'The District Attorney can ask the question becanse the witness (Ruffin Walker) has answered the question two or three different times in two or three different ways.

"Immediately thereupon counsel for defendant reserved this his bill of exceptions to the ruling of the court, for the reason that it was an illegal comment upon the testimony of the accused, which bill being handed to the District Attorney, and by him found correct, is given to the judge presiding, for his consideration and signature after a statement of the District Attorney, which is attached to and made part of the bill.

The District Judge at the foot of the tendered bill, stated that he

declined to sign the bill, because the facts were not correctly stated, that the court had written a statement of the facts and signed it, in place of this; that after it had prepared this statement it was submitted to the District Attorney, who stated that after reading it he was satisfied of its correctness, and that the statement he had signed for defendant's counsel was not correct; that he (the judge) would not sign any bill which did not correctly state the facts.

The court's statement of the facts referred to in his reasons for refusing to sign the bill as presented was as follows:

"While the accused was being cross-examined by the District Attorney he was asked: 'Did you not anticipate the probable result of calling the deceased, Tallie Brown, a liar at the time you uttered the words?' Counsel for defendant objected and stated that the witness had answered the question several times stating that he did not. The District Attorney contended that he had answered him that he did. It was admitted by both counsel that to the State the witness had answered one way and to his own counsel another way. The District Attorney said he wanted a final answer upon this point. This was what defendant's counsel objected to and was the cause of his contention. The court ruled that the District Attorney could ask the question and in giving the reasons for the ruling said: 'It seems that the witness has answered this question both ways (meaning that by admission of counsel on both sides this was a fact) and the court will permit the attorney to ask the question again so as to finally determine the matter. 'The counsel for defendant objected to this statement, and asked for an exception on the ground that it was a comment on the evidence. The court then stated to the jury that it was not intended as a comment on the evidence, but merely as the reason for permitting the question to be asked, and that they would pay no attention to this statement. I understand this rule to mean that the judge shall not state to the jury what has or has not been proven. This statement can not, in my opinion, be construed into a statement of what had or had not been proven or into any sort of a comment on the evidence in the sense meant by the law, and even if it had been, how could it have injured the defendant before the jury when his own counsel had admitted in their presence that he had answered the question both ways. My statement of it could not have made it more impressive than their own open admission. It is presumed that the jury followed the instructions of the

court; that the remark was not a comment on the evidence, and was not intended as such, and they must not regard it. There was certainly no injury to the accused since they only found him guilty of manslaughter, while if they had thought the accused contemplated the result of his words to deceased and used them to induce him to resent them in order to get a chance to kill deceased they would have found him guilty of murder.

" Notwithstanding the statement of the court to counsel and to the jury, counsel insists on his exception, which, with the District Attorney's statement, is attached hereto."

The District Attorney's statement referred to was as follows: " My recollection of the question asked by myself is: ' When you called Mr. Brown a liar did you not anticipate and expect him to resent it?' The counsel for accused objected to this question on the ground that the witness had already answered it two or three times. The court overruled the objection. In ruling the question admissible, the court, in substance, said (as I recollect) that the District Attorney had the right to ask the witness the question, as he was evidently trying to get the witness to answer it positively, as the witness had answered it two or three different times in two or three different ways. When counsel objected, that it was a comment on the facts or testimony of the witness, the court denied that it was a comment on the facts or testimony of the witness. The court denied that it was a comment, and stated that he was merely giving his reasons for his ruling, and that as counsel for the accused and the State differed as to the statement of the witness, he merely gave the above as settling the controversy between counsel and as giving his reasons for the ruling. The court expressly denied that he was commenting on the facts, and I think so expressly stated to the jury. If not directly to them, certainly they heard his disclaimer."

In the brief filed on behalf of appellant, counsel, referring to the judge's charge, say:

" To that part requiring the ' highest degree of exasperation' without qualification we do strenuously object. The charge is too restrictive, in that it failed to warn the jury that this state of mind must be rendered incapable of cool reflection." Am. and Eng. Ency. of Law, Vol. 9, p. 579.

" Following this portion of the charge and *not connected therewith*

the court (incorrectly) lays down this proposition : ' The law requires two things to reduce the crime from murder to manslaughter. First, there should be a provocation ; and, second, the blow be clearly traced to the passion arising therefrom.　The provocation must be such as would stir resentment of an ordinary man.' ''

In Desty's American Criminal Law (" Sec. 128 d—Killing in Heat of Passion "), the author, referring to the condition of mind under the influence of which an accused who has committed a homicide must be in order to reduce the crime from murder to manslaughter, declares (citing Preston vs. The State, 25 Miss. 383) : " The excited and angry condition must have been caused by some insult or injury which would naturally and instantly produce a high degree of exasperation."

The passage quoted by appellant from the American and English Encyclopedia of Law, under the subheading of " *Provocation causing passion—What provocation sufficient,*" states the law to be that " the provocation sufficient to reduce an intentional killing from murder to that of manslaughter must arise at the time of the commission of the offence, or before the passion of the slayer had time to cool. The provocation by deceased must be the direct and controlling cause of the passion, and it must be such as naturally *and instantly to produce in the minds of persons ordinarily constituted the highest degree of exasperation,* rage, sudden resentment or terror, *rendering the mind incapable of cool reflection.*"

The District Court, in its charge, substantially adopted this presentation of the law, which counsel refers to as correct.　If it has departed from it the departure can not be said to have been to the prejudice of the accused.

In making use of the word " instantly," the court was evidently dealing with the character of the provocation given.　A provocation which would not naturally cause instant resentment, but which would have to be thought or brooded over after its commission in order to produce rage or anger was declared by it not to be a provocation such as the law contemplated, as one sufficient to reduce an intentional killing from murder to manslaughter.　We see no error in that statement.　Desty's Am. Crim. Law (Sec. 128-g), referring to " provocation," quotes Rex vs. Thomas, 7 Car. and P. 817 ; Judge vs. State, 58 Ala. 413, and Fields vs. State, 52 Ala. 348, in support of the following propositions which he adopts : " That the law requires two things : first, there should be provocation, and second, the blow

must be clearly traced to the passion arising therefrom, and that the provocation must be such as would stir the resentment of a reasonable man."

These two propositions were given by the District Court to the jury, the only deviation therefrom being in the substitution of the words an "ordinary man" for the words, a "reasonable man." Here again we think that the departure was not prejudicial to the accused. If there be any substantial difference between a "reasonable man" and an "ordinary man," or a man of ordinary reason, influenced and governed in his conduct by such passions and resentments as are found in the "average" man, we think the standard adopted more liberal than the one contended for. The term used conveys to the every-day juror a much clearer and better idea of the standard of man called for by the law than the one which it is desired to replace it by.

We do not attach the same significance and importance to the remark made by the District Judge during the progress of the trial, and which is referred to in the second bill of exceptions, as counsel of defendant do. We do not understand the District Judge to have made any statement in court that defendant's counsel had made an admission relative to his client. The declaration made by the judge that "it was admitted by both counsel that the witness had answered the State one way and his own counsel another" is a statement made by him not in court, but in the bill of exceptions which was reserved in order to explain the reason and grounds upon which he had acted. That particular statement never went to the jury. We understand the judge as intending to inform this court that precisely what the answer of the witness to a particular question of the District Attorney had been, and what that to the same question propounded to him by his own counsel had been, was a matter of contention between counsel; that the District Attorney insisted upon having the question asked and answered another time to the end of settling the contention; that counsel of accused objected to this being allowed, that the question was permitted (over the objection) to be asked and answered. After making this statement of fact, the judge declares that in ruling upon the point submitted to him, he said: "It seems this witness has answered this question both ways. The court will permit the attorney to ask the question again to finally determine this matter."

No exception was taken to the fact itself that the question was

permitted to be again asked, and we are not informed what the answer to the same was. The exception as made was to the words made use of by the court in announcing its ruling. The judge in the bill of exceptions asserts as a fact (and that assertion is not denied) that the witness had answered the question in different ways. If so, it was right and proper if there was any contention between counsel as to what the answers were that the witness should be given an opportunity to set himself right. State vs. Wiggins, 45 An. 416. We presume he did so, for no complaint of prejudice through his answer is contended for.

We fully concur in the opinion expressed by our predecessors in State vs. Alphonse, 34 An. 9, that it is the duty of the District Judge to carefully abstain from any expression of opinion or comment upon the facts of the case in a criminal prosecution not only in his final charge to the jury, but also in his rulings upon the admissibility of evidence in the presence of the jury. Not only this, we think he should avoid, as far as possible, at all times, both in his language and in his actions or conduct, doing anything from which the jury might draw any conclusions as to his views in regard to the case before them. We do not think, however, in the case at bar, that the judge's language created in the minds of the jury the unfavorable impressions touching the accused which counsel maintain they did. It frequently happens that a witness contradicts himself for want of a correct appreciation of the questions asked him, and where as a fact the testimony of a witness has been contradictory, we do not think the mere statement of that fact being assigned by the court as a reason for its permitting the witness to be asked to make a further statement without any opinion expressed adversely to the witness would bring about the serious consequences attributed to it.

The verdict rendered in the case would go to show otherwise. We see enough through the record to know that defendant called the deceased a liar; that the latter then struck him. Whereupon appellant killed him. We do not think it can be successfully claimed that under such a condition of things appellant was justified in so doing and should have been *acquitted*. The object of the question propounded by the State was to hold the case down to one of *murder*. This effort was unsuccessful. We find no ground for reversal.

For the reasons assigned, it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby affirmed.