(38 South. 460.)

No. 15,544.

STATE v. FARRIER.

(April 10, 1905.)

CRIMINAL LAW—EVIDENCE OF OTHER CRIMES—OBJECTIONS TO EVIDENCE — ASSOCIATION — ELECTION OF OFFICERS—PROOF — TRIAL — REMARKS OF JUDGE—FALSE PRETENSES — EVIDENCE.

1. There are exceptions to the rule that on a prosecution for one crime it cannot be shown that defendant on another occasion committed a crime, even though it be a crime of the same sort. Where testimony of that character has been admitted on the trial, the appellate court, in the absence of an affirmative showing to the contrary, must assume that the ruling of the trial court was right, and that it was admitted as falling under some one of the exceptions.

2. Objections urged to testimony that it was "immaterial," "irrelevant," and "inadmissible" are so general as to furnish a weak basis for reversal. In order to test their force, it would be necessary for the appellate court to be advised as to the condition of the entire evidence in the record. State v. Primeaux, 29 South. 110, 104 La. 365. Objections on those grounds to the introduction of certain letters not annexed to any bill of exceptions might possibly have been well founded, but the Supreme Court, having no means of knowing the force and bearing which such letters could or did have upon the verdict, could not reverse on the presumption that they were prejudicial.

3. It was competent for the defense to prove by a witness, who was present at a meeting held for the purpose of an election of officers of an association, who were elected.

The books of the association, if they contained a record of the election (which was not shown) although proper, were not the only evidence on that point, and the fact of who presided and acted as officers at the meeting could also be proved by the witness. The fact that the witness was not a member of the association does not render him incompetent to give testimony as to what he actually heard and saw.

4. The views of the Supreme Court touching comments made by the trial judge in the presence of the jury which were announced in State v. Alphonse, 34 La. Ann. 9, State v. Walker, 23 South. 967, 50 La. Ann. 420, and State v. Logan, 29 South. 110, 104 La. 362, are reaffirmed.

5. Certain testimony objected to was held admissible as part of the res gestæ of the act charged in the information.

(Syllabus by the Court.)

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; Clay Elliott, Judge.

James A. Farrier was convicted of obtaining money on false pretenses, and appeals. Reversed.

F. A. Blue, Duncan Stuart Kemp, Thomas Milton Bankston, Hypolite Mixon, and William Breed Kemp (William Hutchinson McClendon, of counsel), for appellant. Walter Guion, Atty. Gen., and Robert S. Ellis, Dist. Atty. (Robert Raymond Reid, Brittain Birdsong Purser, and Lewis Guion, of counsel), for the State.

Statement of the Case.

NICHOLLS, J. In an information filed against the defendant, it is charged that he designedly and unlawfully did, on the 10th of December, 1904, pretend to Tim Jenkins that he was national grand master of Masons in and for the state of Alabama and Masonic jurisdiction thereunto belonging, said Masons constituting a society or association having for its title—

" 'The Most Worshipful Rose Branch Grand Lodge, Compact of F. & A. A. Y. Masons, in and for the State of Alabama, and Jurisdiction,' etc., and that as such grand master of Masons he had authority to initiate members into said society, and appoint officers for the state of Louisiana, especially a grand treasurer of endowment funds or 'endowment treasure,' and did issue a document to said Tim Jenkins, which he, the said James A. Farrier, presented to the said Tim Jenkins to be a valid and lawful commission for a right worshipful grand treasurer of endowment funds for the said pretended

Most Worshipful Rose Branch Grand Lodge, and that the said commission was and would be of pecuniary value to the said Tim Jenkins; and that by means of all of said false pretenses, and solely because of Tim Jenkins' faith and belief in their truth and verity, the said James A. Farrier did obtain from the said Tim Jenkins the sum of forty-five dollars, lawful money of the United States; whereas in truth and in fact there was no such society or association as the Most Worshipful Rose Branch Grand Lodge, Compact of F. & A. A. Y. Masons in and for the state of Alabama and jurisdiction, etc., and the said James A. Farrier was not a national grand master of Masons in and for the state of Alabama and Masonic jurisdiction thereunto belonging, and the said James A. Farrier did not have authority to appoint a right worshipful grand treasurer of endowment funds, or 'endowment treasure' in and for the Masonic district of Louisiana, and the said commission did not have any value. And that the said James A. Farrier well knew that all of his representations as hereinabove set forth made by him to the said Tim Jenkins were false and untrue, and that the said false pretenses hereinabove set forth were made by him to the said Tim Jenkins with the intention and for the purpose of injuring and defrauding the said Tim Jenkins and obtaining from him the said sum of forty-five dollars, lawful money of the United States, contrary to the form of the statutes of the state of Louisiana in such cases made and provided and against the peace and dignity of the same."

The jury before which he was tried having found him "guilty as charged," he was sentenced to be imprisoned in the State Penitentiary for a period of nine months, and he has appealed.

On the trial of the case, one Sandy Jackson being upon the stand as a witness for the state, he was asked by the assistant district attorney "to state to the jury whether or not any money passed from you to the defendant in this case, the accused, James A. Farrier."

The defendant objected to the question on the ground that the allegation of the information was that defendant received a sum of money from Tim Jenkins, and the witness was not Jenkins, but Jackson; therefore the testimony was "immaterial," "irrelevant," and "inadmissible." The court overruled the objection.

It is well settled that on a prosecution for crime it cannot be shown that the de-

fendant on another occasion committed a crime, even though it be a crime of the same sort; but to this rule there are well-defined exceptions. The court having admitted the testimony, we are, in the absence of an affirmative showing to the contrary, bound to assume that its ruling was right, and the testimony was admitted as falling under one of the exceptions mentioned.

The objections raised are so general as to furnish a weak basis for a reversal. Even had error been shown, we would have nothing before us going to show that it was prejudicial in character. State v. Primeaux, 104 La. 305, 29 South. 110. In order to test the force of the complaint, it would be necessary for us to be advised as to the entire evidence, inasmuch as the relevancy, materiality, and admissibility of the testimony admitted would be dependent upon knowledge of the whole situation.

Complaint is urged to the introduction in evidence by the state of certain letters not before us as being incompetent, "irrelevant," "illegal," and "inadmissible"; but as the letters are not before the court we can form no opinion and can express none on the subject. A witness named Lange, to whom these letters seem to have been addressed, being on the stand as a witness, was asked by the assistant district attorney, "Had you reason to expect such a letter? If so, state what the reason was?" The defendant objected on the ground that the question called for the opinion of the witness, whereupon the court said:

"The question is a proper one, having for its object to lead up to a proper and a correct identification of the letters, and to prove from whom they were received."

What answer the witness gave to this question we do not know, nor do we know to what the letters alluded to had reference. What influence or bearing the letters themselves had on the questions asked and the answers given in regard to them in determin-

ing the verdict, we have no means of know-
ing. If error was permitted by the court
in the matter, that per se would not war-
rant a reversal. In defendant's brief it is
said that "the letters were dated after the
commission of the offense. They were not
in the possession of the prosecuting witness,
and were not addressed to him." All this
might be true, and yet the letters be prop-
erly admitted in evidence. If they were
written by defendant, they may have con-
tained references which bore directly upon
the matter under investigation.

On the trial, a witness for the defense,
named Blue, being upon the stand, was ask-
ed, as to the particular meeting which he
testified to having attended:

"Did you hear any of the proceedings of that
meeting of that body while you were there?"

To this question the state objected on the
ground that the minutes of the meeting were
the best evidence. The court sustained the
objection, and in doing so said:

"Counsel for the state objects to any parol
evidence of proceedings of any convention of
any society, social society or organization, or
any social society, whether under any charter
or not, except the production of the minutes of
such convention. The court rules that the wit-
ness has testified substantially that he was not
a member of this congregation or assemblage
to which he refers, and it appears that the
assemblage was not a part or parcel of any in-
corporated body; therefore that the witness,
not being a member of that meeting as it were,
except for the special purpose of explaining
legal matters in which the meeting was con-
cerned, it is not proper for him to give tes-
timony of what took place at that meeting."

—And excluded the testimony on that ground.

The bill of exception itself on this subject,
after stating the objections alleged to have
been made of the ruling of the court thereon,
says:

"To which ruling defendant excepts, and re-
served a note, to be used as a basis for a
future bill of exceptions."

—And following this recital by the following:

"Counsel for Defendant: I desire to reserve
a bill to the comment made by the presiding
judge on the testimony as given by the wit-
ness on the stand in the presence of the jury."

The judge's statement at the foot of the
bill says:

"The above bill is part of No. 18 and all of
number 19 as numbered by the stenographer."

By reference to the objection and exception
as taken down by the stenographer, the
grounds assigned in the exception are not as
taken down by the clerk. As to the remarks
made by the court claimed to have been a
comment on the facts, it is apparent that
there was nothing of the kind intended, and
the remarks were withdrawn, and the jury so
instructed. The stenographer's notes contain
the following entry made at the time:

"In regard to the last bill the court states
to the jury that he did not intend what was
said as a comment on the facts or other evi-
dence, but only for a legal ground for a rul-
ing of the court, and then at the same time
charges the jury that, as far as any comment
on facts in the case were concerned made by
the court, to disregard them, as they were not
intended as such; that the only thing the court
had in mind was to give legal reasons and
grounds for its rulings."

Reference to the stenographer's notes show
that the district judge embodied in his rul-
ing upon the objection made to the evidence
reasons which were doubtless assigned orally
by the district attorney as the basis for the
particular ultimate objection which he made,
but the latter alone appears in the notes.
The objection, as recorded, reads simply:

"The state objects on the ground that the
minutes of the meeting is best evidence."

It appears from the stenographer's notes
that the witness Blue testified that he was an
attorney in Alabama. That he was em-
ployed by the defendant to represent the Rose
Branch Lodge of Negro Masons of the United
States. That he was present as attorney at
law in a national convention of that body in
the upper rooms in the building on the corner
of Cornaca and Prieur, in Union Springs, Ala.,
in September, 1903, at which there were from
60 to 75 persons present. That the defend-
ant presided over that body as national grand
master of the Rose Branch Negro Masons of

the United States. He went before the body by invitation, for the purpose of explaining to that national body the proceedings in the chancery court of Bully county, Ala., where the Olive Branch Grand Lodge of Legal Masons had filed a bill of information and injunction, which injunction was never granted. At that stage of his testimony, on objection made by the state, he was ordered to make no statements outside of the document which he held in his hand (a document purporting to be a copy of the proceedings in the chancery court).

The document itself was read to the jury. Witness was then asked the question, which was objected to by the state:

"Did you hear any of the proceedings of that meeting of that body while you were there?"

### Opinion.

Counsel of defendant urge in their brief that the state's case depended on the proof that the defendant was not an officer of any incorporated body; that he falsely represented himself to be a duly authorized officer of the Rose Branch of Negro Masons, and the proof offered by the defense (witness Blue) was to show that defendant was elected at the meeting; that the court excluded the testimony of Blue on this point, and in making its ruling told the jury that the assemblage was not a part or parcel of any incorporated body.

We do not think that under the circumstances of this case the defendant was called upon to assign, with any more detail than he did, why he excepted to the judge's ruling. He had himself offered the evidence. It was objected to on the ground specifically set up by the state. The court sustained the grounds, assigning its reasons, and the defense excepted. We think the issue raised by the exception is sufficiently presented to us. We think the court erred in its ruling. It is not and was not claimed that there were any written minutes kept of the meeting in question. It seems to have been assumed by the state and the court that there were such minutes, and that they were the best evidence of the fact. It is by no means to be assumed that there were official minutes kept of that meeting, and, had there been such, we are not prepared to say that their production was necessary. The facts attempted to be proved were to be utilized incidentally in a collateral proceeding. The action was not brought by one basing his direct right of action upon the proceedings as his authority in the premises. We are of the opinion that, if the witness was present at a meeting of a body such as it purported to be, and that the defendant presided over it in Alabama in the capacity asserted, it was competent for him to testify to that effect as being "facts" known to him by actual knowledge, and that this was permissible whether the body was an incorporated body or not. It was certainly admissible as one of the links of evidence for the defense for what it was worth. Jones on Evidence, § 203, and authorities cited; Smith v. Richards, 29 Conn. 239; Partridge v. Badger, 25 Barb. 171. In the last-mentioned case the Supreme Court of New York said:

"It was competent for the plaintiff to prove by the testimony of witnesses who were present at an election of directors who were elected. The books of the company, if they contain a record of the election (which does not appear), although proper, are not the sole evidence to that point, and the fact of who were directors might also be proved by the testimony of witnesses as to who acted as such. Angel & Ames on Corporations (2d Ed.) 222, 223; Conover v. Ins. Co., 1 N. Y. 290; Bank of U. S. v. Dandridge, 12 Wheat. 83, 6 L. Ed. 552; Beers v. Phenix Glass Co., 14 Barb. 358; Hoyt v. Thompson, 5 N. Y. 320."

The fact that the witness Blue was not a member of the association or corporation which was then in session was no ground for rejecting his testimony as to what he actually saw or heard when present at the meeting. The additional complaint made in this same bill "that the district judge, in overruling the objections of the defendant, made use in the presence of the jury of statements prejudicial

to him," is one which we have had occasion to pass upon several times without the action of the court thereon being noted in the syllabi. The result of this has been that these cases are referred to by neither counsel, and the court itself would be unable to do so unless it should delay the work it has in hand in order to make special examination. State v. Alphonse, 34 La. Ann. 9; State v. Walker, 50 La. Ann. 420, 23 South. 967; State v. Logan, 104 La. 362, 29 South. 110, are particular cases in which the views of the court on the question are set out in the headlines. In 12 Cyc., pp. 539, 540, this subject is discussed by the writer in the article of "Criminal Law," with a citation of authorities in support of his text. The views adopted are simply his conclusions as to what the decisions which he quotes warrant him, in his opinion, in stating to be the prevalent legal doctrine upon the particular matter.

Under the headings of "Comments of the Judge," "Rulings on the Admissibility of Evidence." and "On Facts in Issue," the writer says:

"It is proper for the court to state its reasons for admitting or excluding evidence, or to state the purpose for which the evidence is offered or admitted; but remarks of the court on excluding evidence, which contain an intimation that it believes defendant is guilty, constitutes error, as invading the province of the jury. It is no less improper for the trial judge to intimate that the witnesses are credible, and to hint that those for the defense are not, but a remark discrediting the credibility of a witness for the state is not.

"It is the duty of the court to abstain carefully from any expression of opinion or comment upon the evidence, not only in its charge to the jury, but during the examination of witnesses. The trial judge should not deny the existence of any fact bearing on the innocence of the accused, and it is error for him to make any remark or inquiry in the presence of the jury concerning matters of fact at issue which might indicate his opinion as to such facts. It has been held that the error is not cured by the court's telling the jury that it is their exclusive province to determine the facts and instructing them not to be bound by his opinion. State v. Dick, 60 N. C. 440, 86 Am. Dec. 439."

In State v. Alphonse, 34 La. Ann. 15, this court said it did not hesitate to declare that any expression of opinion by the judge during the progress of the trial, made in the presence of the jury or out of their presence, was to be condemned; that it was the duty of the judge to carefully abstain from such expression, both in ruling upon the admissibility of evidence and in his charge to the jury; and that any clear, though hasty and inadvertent, expression of opinion touching any material fact developed by the evidence might well be regarded as fatal to the proceedings. The court added: "We must, however, judge of the matter, and form our conclusions from the entire record relating to the subject." The court then refers to the complaint made in that particular case, noting particularly the facts that the judge's statement was cut off in the middle of a sentence; that the judge denied any intention of expressing any opinion, and that he disclaimed such at the time to the jury, with an emphatic declaration to them that it was their province, and not the court's, to determine what the evidence was, and what effect should be given to it. All this it was the appellate court's duty to weigh, and, giving it its proper weight, determine whether it operated to the prejudice of the accused. In conclusion the court (dealing with the case before it) said:

"We find no case in which such chance, careless, and incomplete expression (even without the denial and explanations attending it) has been deemed sufficient to set aside a verdict."

These views were concurred in by this court in State v. Walker, 50 La. Ann. 427, 23 South. 967, in which, also, it, for reasons assigned, refused to set aside the verdict. Each case will have to be passed upon under its special state of facts. It is our bounden duty to see that the accused suffers no injury at the hands of the court, but it is also our duty in the administration of justice to see that parties found guilty of crime by the verdict of a jury concurred in by the trial judge should not escape punishment by rea-

son of harmless and unimportant errors committed in the course of the trial. It may sometimes happen that matters are placed before the court under circumstances such as for the purposes of making a ruling it is unavoidably forced to make a statement of fact as to the evidence which has already gone to the jury. In such cases the trial judge should be exceedingly guarded in the terms in which he refers to it. In the case at bar, while we are not prepared to declare that the statements made by the judge would have had prejudicial effect upon the conclusions of the jury so as to justify a reversal, yet we must say that the trial judge was injudicious in using language of character such as to make even the use of the same a debatable matter in the appellate court. He should not have employed the language of the objections raised by the district attorney, but should have ordered the stenographer to have taken them down exactly, and caused them to be read aloud so as to verify them, and then ruled upon them. He should not, in ruling, have declared to "what the witness Blue had testified to," nor that "it appeared that the assemblage was not a part or parcel of incorporated body."

Those facts should have appeared for themselves in the stenographer's notes.

Several questions are submitted to us for decision on different bills of exception, including matters not likely to occur on a second trial, and therefore we will not act upon them.

There is, however, one exception to this. It is as to whether the state was warranted in seeking to establish by the witness Jenkins, the party alleged to have been defrauded of his money through the alleged false pretenses of the defendant, whether the latter had given him "any thing or token, either mineral or metallic, or any other character, in connection with, or illustrative of, or emblematic or symbolic of, anything relating to the society of Freemasonry of which wit-

ness claimed to be the national grand treasurer." The bill of exception taken on the subject recites:

"To this question defendant objected on the ground that the question was immaterial, illegal, and irrelevant."

The court overruled the objection, saying:

"The court rules that any testimony that will show the charge either on the side of the state or defendant is admissible; that any testimony that will substantiate the charge in the bill of information is admissible in law—is admissible."

Defendant moved "to exclude the presentation of this piece of loadstone to the jury, because the witness says that after he had paid his part of the money—that part of the money he was to pay—the defendant gave him this piece of loadstone, and therefore it was immaterial, illegal, and irrelevant."

The district judge thereupon said:

"The court rules that statement of the counsel is not in line with the statement of the witness; that the statement of the witness—"

Before the sentence was concluded, the assistant district attorney said, "Suppose I ask the question?" Receiving permission, he asked: "At what time did he give you this piece of loadstone?" to which the witness answered, "On the 10th of December." Witness was then asked by the assistant district attorney, "What did you pay him that money for?" to which he replied: "For my office. I paid him the money the same morning I paid for my office." Thereupon the district judge said:

"The court rules that the objection of the counsel for defendant is not clear, and not exactly in line with the statement of the witness. The court understands that the witness has said that this loadstone was given to him by James A. Farrier, the accused, with the card; that the accused stated to him that it was necessary for each Freemason to have a piece of this loadstone in order to be a Freemason. The court refuses to exclude this piece of loadstone, and overrules the objection. The court will receive all testimony in regard to anything in the nature of fraudulent pretenses charged in the bill of information, and for which any consideration was paid by the witness to the accused, of every kind—loadstone, writing, or anything at all—receiving at the same time testimony to rebut

and explain any of the allegations contained in the bill of information."

To which remarks (says the bill of exceptions) counsel for defendant object on the ground that it is a comment in the presence of the jury on the testimony of the presiding judge as given on the trial of this case.

The court's addendum to the bill was as follows:

"The above is part of exception No. 4, and all of Nos. 5 and 6 as numbered in statement of facts prepared by the stenographer and deputy clerk, and by reference to the exception as taken down it will be seen that counsel for accused did take an exception, but does not expressly place it upon any particular ground. In the exception as noted it is not said that it was a comment in the presence of the jury on the testimony by the presiding judge. As thus corrected, signature to the bill is offered."

Reference to the stenographer's notes discloses that the statement made by the district judge that no exception was taken to the comments of the trial judge is correct. We may say in regard to them, however, that the court should not have characterized them —the loadstone—as being in the nature of the fraudulent pretense charged in the information for which consideration was had. The ruling could and should have been couched in different words. Recurring to the exception actually taken, that the testimony sought to be elicited was immaterial, illegal, and irrelevant, we think the objection was not well founded. The prosecution was obviously seeking to bring out the whole of the transaction charged in the information— everything connected with and forming part of it, going to make up and prove the fraudulent intent and pretenses of the defendant on that particular occasion. We think that the giving of the loadstone to the witness was part of the res gestæ; that testimony in regard to it was not illegal, inadmissible, and immaterial.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and re-versed, and this cause is ordered to be reinstated on the docket of the district court, and it is remanded to said court for further proceedings according to law.