# BEN BOND v. STATE.

## No. A-577. Opinion Filed February 1, 1913.

### (129 Pac. 666.)

1. INDICTMENT AND INFORMATION—Election Between Counts—Duplicity. (a) Under an indictment containing two or more counts, each based upon the same act and charging the same offense, it is not error for the trial court to refuse to require the state to elect upon which count in the indictment it will put the defendant upon trial.

(b) For an indictment charging the offense of bribery which is held not to be bad upon the ground of duplicity, see opinion.

2. EVIDENCE—Acts of Conspirators — Bribery — Writ of Error —Harmless Error. (a) Where persons enter into a conspiracy or general plan to bribe officers and thereby secure immunity from prosecution for violations of law, all said and done in pursuance of this conspiracy or general plan by any of the co-conspirators and which tends to throw light upon a specific charge of bribery made against one of the co-conspirators is admissible in evidence.

(b) Any fact or circumstance which has probative value as to a conspiracy or the purpose for which it was formed and anything that was done in pursuance thereof is admissible against a co-conspirator as though said and done by himself, when the defendant is on trial for a specific offense included in such conspiracy or general plan.

(c) If, upon a review of the entire record, the guilt of the accused is conclusively established, and there is no reason to believe that an intelligent and honest jury would or could have arrived at a different verdict, a conviction will not be set aside upon the ground of admission of illegal testimony.

3. TRIAL—Province of Court and Jury—Correction of Errors. (a) Courts should carefully abstain from expressing any opinion in the presence of the jury as to the weight, effect, or credibility of the testimony; and, where the evidence presents any issue upon

which a verdict of acquittal might be reached, such expression of the trial court will be reversible error.

(b) Where the trial court in the presence of the jury inadvertently expresses an opinion as to the weight or effect of any testimony, and upon objection being made promptly withdraws the improper remarks and instructs the jury not to consider them, this will ordinarily cure the error committed.

(c) For remarks made by the trial court in the presence of the jury as to the effect of certain evidence which were promptly withdrawn, and which in the light of the entire record did not constitute reversible error, see opinion.

(Syllabus by the Court.)

*Appeal from District Court, Pottawatomie County; J. B. A. Robertson, Judge.*

Ben Bond was convicted of bribery of officers of the law, and his punishment assessed at confinement in the penitentiary for five years, and he appeals. Affirmed.

*Freeling & Hood,* for appellant.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

FURMAN, J. The transcript of the record in this case contains over 1,000 pages, and the briefs in the case for both parties contain about 300 pages, every word of which has been read and re-read and carefully considered by this court. If we were to attempt to make anything like a fair abridgement of the testimony, and to discuss and decide all of the various questions presented, our opinion would fill an entire volume of our reports. Every step in this case was bitterly contested by able, learned, and experienced lawyers, and the entire field of legal learning has been appealed to to sustain the contentions of counsel for appellant. We do not question the right of counsel to reserve an exception to every ruling of the court that they may deem erroneous and prejudicial, but, when a record shows that an exception was taken to everything done by the court, it naturally suggests the inference that counsel did not have very much confidence in any exception reserved,

and were depending rather upon the number than upon the weight of the objections made. We hardly think that immaterial errors in mere matters of form which did not affect the substantial merits of the cause, in the absence of a disposition on the part of the trial judge to be unfair, should secure the reversal of a conviction upon the doctrine of cumulative error, because in lengthy and hotly contested cases a greater or lesser number of immaterial errors will necessarily get into a record.

We have endeavored as best we can to select from the great number of alleged errors presented those which are material to the proper determination of this case.

First. Counsel in their brief say:

"We think the court erred in admitting evidence upon the part of the defendant in error, prejudicial to the rights of the plaintiff in error, and also in refusing to require the state to elect upon which count in the indictment it would put the defendant upon trial."

The judgment in this case charges, in substance, that Ben Bond did on the 15th day of January, 1909, give a bribe, to wit, $250, to William N. Maben, a judicial officer, and to V. R. Biggers, county attorney of Pottawatomie county, and to E. D. Reasor, county judge of said county, and to W. F. Sims, chief of police of the city of Shawnee, said county and state, with the felonious intent of the said Bond to influence the acts, opinions, decisions, and judgments of them, the said above-named officers, in their official capacity, to wit: The question of whether B. O. Johnson should be arrested, prosecuted, tried, sentenced and punished as by law required for a violation of any of the provisions of the Constitution or the laws of the state of Oklahoma relating to the sale of intoxicating liquors. The indictment contains six counts. In the first count the defendant is charged with bribing all of the officers named, and in the remaining five counts the defendant is charged with bribing, for the same purpose, and at the same time, each of the above-named officers, separately.

Section 6699, Comp. Laws 1909 (Rev. Laws, 5741), is as follows:

"The indictment must charge but one offense, but where the same acts may constitute different offenses, or the proof may be uncertain as to which of two or more offenses the accused may be guilty of, the different offenses may be set forth in separate counts in the same indictment and the accused may be convicted of either offense, and the court or jury trying the cause may find all or either of the persons guilty of either of the offenses charged, and the same offense may be set forth in different forms or degrees under different counts; and where the offense may be committed by the use of different means, the means may be alleged in the alternative in the same count."

We think that the different counts in the indictment all charge one and the same offense and are based upon the same transaction, and that they were inserted in the indictment merely for the purpose of avoiding the possibility of a variance between the allegations and the evidence. See *Williams v. United States,* 17 Okla. 33, 87 Pac. 647; *Sturgis v. State,* 2 Okla. Cr. 362, 102 Pac. 57; *De Graff v. State,* 2 Okla. Cr. 519, 103 Pac. 538. The trial court therefore did not err in refusing to require the state to elect upon which count in the indictment it would put the defendant upon trial.

Second. Upon the trial of this cause the court admitted a great deal of testimony with reference to a number of different transactions upon the ground that they tended to show a conspiracy or general plan, of which the offense charged constituted a part and with which the defendant was connected, the purpose of which conspiracy being to corrupt officers, and secure immunity from prosecution for violations of the prohibitory and gambling laws of the state. In the case of *Carter v. State,* 6 Okla. Cr. 232, 118 Pac. 264, appellant was convicted of embezzlement. Upon the trial of that cause the court instructed the jury as follows:

"(5) You are instructed that testimony has been submitted to you by the court as competent for your considera-

tion tending to show various other embezzlements of sums of money, other than as charged in the indictment, and that false entries thereof were made and committed by the defendant, and in this matter you are instructed that, if you believe from the evidence beyond a reasonable doubt that the defendant did embezzle such sums and make such false entries and fraudulently appropriate such sums of money to his own use as therein mentioned, then, in such case, said evidence is only to be considered by you as bearing upon the fact whether or not the defendant embezzled and fraudulently appropriated the specific amount alleged in the indictment, and at the time alleged in the indictment, and as tending to show the intent, if any, of the defendant in the commission of the offense alleged against him, and for this or such purpose alone you will consider such evidence of other offenses. And in this connection you are told that although you may believe that such other offenses were committed by the defendant, but you should have a reasonable doubt that he committed the specific offense alleged against him in the indictment, then it would be your duty to acquit him. Otherwise you should convict him."

In discussing this instruction this court said:

"The only possible objection that can be offered to those instructions is that paragraph 5, with reference to other similar offenses, might have been broader, and the jury might have been instructed that if they found from the testimony, beyond a reasonable doubt, that the other similar offenses testified to had been committed, and that they constituted parts of a plan or system of the defendant of embezzlement, to the very act of taking at issue, then the jury might consider the testimony as to these similar offenses for the purpose of assisting them in determining as to whether the defendant did take the money which he was charged in the indictment with having taken, and also to show the intent with which the act was committed. See 1 Wigmore on Evidence, sec. 329, p. 417; 11 Ency. of Evidence, pp. 805, 806. But the failure to include this view of the law in paragraph 5 of the instructions was beneficial to the appellant, and he therefore cannot be heard to complain at this omission. With the view above suggested incorporated in paragraph 5, the instructions given would be above criticism."

For a discussion of the question of the responsibility of co-conspirators for all that is done and said in pursuance of a common design, and also all that is done and said in any collateral undertaking incident to such common design, see *James Holmes v. State,* 6 Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300; *S. L. Burns v. State,* 8 Okla. Cr. 554, 129 Pac. 657. For an exhaustive brief supporting the views expressed in the above cases, see annotations to the case of *People v. Lawrence,* 68 L. R. A. 193. The admissibility of such evidence is for the court alone. The weight to be attached to the testimony is a question for the jury. The state is necessarily confronted with great difficulty in establishing prosecutions of this kind, because conspiracies are always secret and are discovered with great difficulty. Therefore any evidence which tends to establish a conspiracy should be submitted to the jury. Conspiracies of this kind are necessarily proven largely by circumstantial evidence, and any circumstance should be admitted in evidence which in the slightest degree tends to prove such conspiracy. In *State v. Dulaney,* 87 Ark. 17, 112 S. W. 158, 15 Ann. Cas. 192, the defendant was indicted for bribery. The state offered evidence of other similar offenses, but the court refused to admit the testimony, and the defendant was acquitted. The state appealed. In discussing this question the Supreme Court of Arkansas said:

"The principle of evidence that offenses or acts similar to the one charged may be competent for the purpose of showing knowledge, intent, or design is as thoroughly established as the general proposition that other crimes or offenses cannot be shown in evidence against a defendant charged with a particular crime. While the principle is usually spoken of as being an exception to the general rule, yet, as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts which are from their nature competent as showing knowledge, intent, or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows the defendant was guilty of another crime does not prevent it being admissible

when otherwise it would be competent on the issue under trial. *Higgins v. State,* 157 Ind. 57, 60 N. E. 685; 1 Wigmore on Evidence, sec. 300. This court has applied the principle under discussion in *Howard v. State,* 72 Ark. 586, 82 S. W. 196; *Johnson v. State,* 75 Ark. 427, 88 S. W. 905; *Woodward v. State,* 84 Ark. 119, 104 S. W. 1109. The Court of Appeals in New York stated the principle as follows: 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial.' And in discussing the fourth ground above enumerated, it says: 'Fourth. As to a common plan or scheme, it sometimes happens that two or more crimes are committed by the same person in pursuance of a single design, or under circumstancees which render it impossible to prove one without proving all. To bring a case within this exception to the general rule which excludes proof of extraneous crimes, there must be evidence of system between the offense on trial and the one sought to be introduced. They must be connected as parts of a general and composite plan or scheme, or they must be so related to each other as to show a common motive or intent running through both.' *People v. Molineux,* 168 N. Y. 264, 61 N. E. 286, 62 L. R. A. 193. Mr. Wigmore, in speaking of the admissibility of such evidence in charges of bribery, says: 'On a charge of bribery, any of the three general principles—knowledge, intent, and design—may came into play. To show knowledge of the nature of the transactions, a former transaction of the sort may serve, as indicating an understanding of the particular transactions. To show intent, another transaction of the sort may serve to negative good faith. To show a general design a former attempt towards the same general end may be significant.' 1 Wigmore on Evidence, sec. 343. In the notes to this section may be found a review of the authorities; and it is found that they are not uniform in sustaining the principles announced by Mr. Wigmore, and he indulges in some caustic criticism of the courts that take views opposite to his statement of the correct principle. The best thought on the subject seems to be with Mr. Wigmore, and

is found applied in the following bribery cases: *Guthrie v. State,* 16 Neb. 667, 21 N.. W. 455; *Higgins v. State,* 157. Ind. 57, 60 N. E. 685; *State v. Schnettler,* 181 Mo. 173, 79 S. W. 1123. The last case is especially pertinent here.. Schnettler was on trial charged with accepting a bribe when a member of the House of Delegates in the city of St. Louis, in regard to a certain bill authorizing a corporation to construct, maintain, and operate a street railway business on certain streets and other public places in said city. Evidence was adduced to show that a 'combine,' as it was called, was formed by members of the House of Delegates to corruptly control legislation. Over the objection of the defendant, the state was permitted to prove that the defendant had received $2,500 as a bribe to induce him to cast his official vote in favor of a bill previously pending before the House of Delegates affecting the lighting of the public streets of St. Louis —a separate and distinct measure from the one concerning which he was charged with bribery. The court said: 'The authorities all hold that as a general rule the state cannot prove against a defendant the commission of offenses other than the one charged and for which he is upon trial; but an exception exists with respect to this rule where the collateral crime is brought into a common system, a system of mutually dependent crimes, or is linked to the crime under trial as to show that it is part of the same scheme or understanding, or in some way have some logical connection with the crime charged.' Applying the above-announced principle to the facts of the case, the court then said: 'It appears from the evidence that about the time of the organization of the House of Delegates a combination was entered into between various members of that body, including the defendant, for the purpose of controlling legislation by the members of the combine demanding and receiving money consideration for the passage or defeat of certain bills which might be brought before them, to be paid by the individuals, coporations, or parties interested therein, and that defendant did, in fact, receive the sum of $2,500 on account of his vote on the lighting deal. This arrangement was not only with respect to the lighting deal in which he received $2,500 for his vote, but it applied to all other matters of a similar character which might come before the House of Delegates, and was therefore part of the same scheme, or arrangement, and logically connected with

the charge in the information, hence formed an exception to the general rule, and the facts in respect thereto were admissible in evidence for the purpose of showing that the crime charged was within the scope of the purpose of which the conspirators were banded together, and to explain and corroborate other testimony which bore directly upon the commission of the crime charged.' The bill mentioned in this indictment was before the committee of which defendant was chairman. The evidence offered tended to prove that all bills affecting corporations which were referred to the committee of which he was chairman should be looked after by him in the interest of his corrupt general agreement with Cox, where Cox was interested, and that Cox was interested in this bill, while it is not offered to be shown that Dulaney knew Cox was interested in this particular bill, yet the bill was of that character that was covered by his general agreement with Cox, and it was a part of the same scheme and arrangement, and logically connected with the matters covered in his general agreement. A perusal of the evidence in the case shows that, had the state's witnesses been believed, the jury would have been authorized to convict; and, on the other hand, had the defendant's witnesses been believed, the defendant was fully exonerated of the charge against him, and the jury warranted in believing the charge against him an effort to ruin him by his personal and political enemies. In view of such state of the evidence, it was manifestly important that proper corroborating evidence of either side be not excluded. The evidence offered was admissible for the purpose of showing that the crime charged was within the scope of the purpose for which it was alleged the defendant and Cox had conspired, and to explain and corroborate other testimony which bore directly upon the commission of the crime charged, which testimony might be meaningless unless pointedly explained by this general corrupt agreement to which it was alleged this defendant was a party. It is therefore the opinion of the court that the circuit court erred in not admitting the offered evidence."

We could quote authorities indefinitely to the same effect; but as this court has repeatedly announced the same doctrine, a further discussion of this question is unnecessary. If the evidence in this record is worthy of credence, it reveals an

appalling and almost incredible condition of official corrup-
tion existing at that time in Pottawatomie county. In the
absence of any showing that the jury was influenced by improper
motives in arriving at their verdict, the credibility of the wit-
nesses was for the jury alone. Much of the evidence was posi-
tive and direct. Some of it was only remotely connected with
the charge under investigation, but we cannot say it did not
tend to establish a conspiracy to corrupt the officers of Pot-
tawatomie county, and thereby secure immunity from prosecu-
tions for violating the prohibitory and gambling laws of the
state, and that it did not tend to show that the offense of
which appellant was convicted constituted a part of such con-
spiracy. While the court may have erred as to the introduc-
tion of some of this testimony, yet, upon the entire record,
the guilt of appellant is so conclusively established that we
feel it would be a miscarriage of justice to set this verdict
aside upon the ground that it was not proven that appellant
was connected with some of the transactions in evidence.

Third. Counsel complained of remarks made by the trial
judge in the presence of the jury. When John Rogers, a
state's witness, was on the stand, and was being examined by
the Attorney General as to a certain transaction, the record
shows that the following took place:

"Mr. Freeling: I am going to renew the request to con-
nect the defendant with this in some way—this and the Sep-
tember transaction. I would like to have it connected with
Mr. Bond; absolutely nothing to connect it, and admittedly so.

"The Court: The same order on this proposition—there
will be no use—connect it with the September meeting—

"Mr. West: The defendant is already connected with the
September meeting.

"The Court: I understand he is connected, but I un-
derstood you were going to continue this matter with this
witness.

"Mr. West: I am going to show how this *habeas corpus*
matter operated.

"Mr. Freeling: Does it make any difference how this operated?

"The Court: No, sir; it is only collateral to the general plan.

"Mr. Freeling: We object to any further testimony on this line until the defendant is connected with it.

"The Court: I am satisfied as I said a while ago that he has been connected with it as a part of this general plan.

"Mr. Freeling: Note our exception to the language of the court.

"The Court: Gentlemen of the jury, you will disregard the statement of the court made a while ago with reference to anything of the connection of this defendant with any transaction at any time and any place. It is not the province of the court to act in performing the duties of the jurors, and you will disabuse your mind entirely of it, and must not take into consideration anything I said at that time concerning this defendant or his connection with any transaction whatever. These are matters for you to determine, and you will not consider it all in any way or any manner that statement, and that part of the language of the court with reference to that matter will be stricken from the record and from the jury."

It was unfortunate that the trial judge expressed an opinion as to whether or not the evidence established the fact that the defendant was connected with the transaction in question. This was a question for the jury alone. It is true that there must have been some evidence showing a general plan and connecting the defendant with the particular transaction before such evidence would be admissible. Of this question the court was the judge, and the fact that the court overruled the objection to this evidence might have created the impression upon the minds of the jury that there was at least some evidence in the record connecting the defendant with it. But this is a matter of which the defendant cannot complain, because it would arise every time the court overruled the objection to the admission of such testimony. In fact, it would be an unavoidable incident in the administration

of justice, but the trial court should always be careful to avoid anything like an expression of an opinion in the presence of the jury as to the weight, effect, or credibility of any testimony. We know that it is exceedingly difficult in ruling upon the testimony to always avoid expressing the views of the court with reference to the testimony objected to, and that improper remarks will sometimes be made by the ablest and most impartial trial judge which are afterwards regretted. This is illustrated by the instructions which the court gave the jury as soon as the trial judge had had time to think of what he had said. The jury was positively instructed to disregard the statements made by the court, and the different duties of the court and jury were clearly stated. The remarks of the court were withdrawn and stricken from the consideration of the jury. We think under the circumstances this cured the error complained of.

In the case of *Richards et al. v. Commonwealth* (Ky.) 67 S. W. 818, one of the grounds for reversal of that case was that the court had made a remark with reference to the evidence. The Court of Appeals of Kentucky, in passing upon the alleged ground for reversal, said:

"Another ground of complaint is that upon the trial of the case the presiding judge, in the presence of the jury, said to the commonwealth's attorney, 'I think you have proven enough against Snow already.' Upon objection being made, the judge at once instructed the jury to pay no attention to his remark to the commonwealth's attorney. The remark was very improper, but in view of the fact that the judge immediately cautioned the jury to pay no attention to it, and the additional fact that the testimony in the case establishes the guilt of appellants beyond all peradventure, it was not such prejudicial error as would justify a reversal of the case."

In the case of *State v. Gatlin,* 170 Mo. 354, 70 S. W. 885, one of the alleged grounds for reversing the case was that the court remarked in the presence of the jury that a conspiracy was shown to exist. The court disposed of the con-

tention of the defendant very promptly by the use of this language:

"Indeed, in this connection, the inadvertent remark of the trial judge in passing upon defendant's objection to Bozarth's testimony that there was evidence of a conspiracy was promptly remedied by his telling the jury he was simply passing upon the objection and not to pay any attention to what he said as to the evidence. This explanation to the jury left the defendant no ground for complaint."

See, also, *Smith v. State,* 107 Ala. 139, 18 South. 306; *Bone v. State,* 86 Ga. 108, 12 S. E. 205; *State v. Stephen Jacobs,* 106 N. C. 695, 10 S. E. 1031; *Carethaus et al. v. State,* 78 Wis. 560, 47 N. W. 629; *State v. Burwell,* 52 Kan. 686, 35 Pac. 780; *Cone v. Smyth,* 3 Kan. App. 607, 45 Pac. 247; *State v. Crawford,* 39 S. C. 343, 17 S. E. 799; *Ward v. State,* 85 Ark. 179, 107 S. W. 677; *Dailey v. State* (Tex. Cr. App.) 55 S. W. 821; *State v. Coleman,* 17 S. D. 594, 98 N. W. 175; *State v. Walker,* 50 La. Ann. 420, 23 South. 967.

Even if the fact that the trial court did withdraw from the consideration of the jury the objectionable remarks complained of did not have the effect of curing the error committed, we would hesitate long before reversing this conviction on this account alone. If there was any reason to believe that the jury would or might have reached a verdict favorable to the defendant upon the testimony, then such remarks, if permitted to stand, would constitute reversible error. But, where it is manifest from the record that the jury have reached the only possible conclusion which intelligent men could arrive at, we do not believe a verdict should be set aside for any except the most grave and serious grounds. We have carefully read and re-read and considered all of the testimony in this case, and, taken as a whole, it conclusively points to the guilt of appellant. In the case of *Carter v. State,* 6 Okla. Cr. 232, 118 Pac. 264, this court said:

"Where the evidence in a case is clear as to the guilt of the accused, and there is no reason to believe that upon a second trial an intelligent and honest jury could arrive at any

other verdict than that of the guilt of the accused, the judgment of the lower court will not be set aside for anything less than fundamental errors."

This is the settled policy of this court, and we believe is necessary for the administration of justice in Oklahoma. In addition to the conclusive character of the testimony in the case, there is another consideration which should not be overlooked. The offense of which appellant has been convicted strikes at the very foundation of the administration of justice in Oklahoma. As long as the courts are honest, fair, and courageous, liberty and justice can be protected and enforced, but if the courts become cowardly and corrupt, or if the confidence of the people is destroyed or shaken in the fairness, justice, courage, and integrity of the courts, government becomes a farce, and it is impossible to conceive or describe the demoralization which would result in social conditions among the people. The offense of which appellant has been proven guilty is in the same class with perjury, and is second in infamy only to offenses against the chastity of woman, and when it is proven that a defendant is guilty of an attempt to bribe or of bribing and corrupting a judge of a court, or the officers or jury thereof, he should not be permitted to escape upon any light and trivial grounds. In this case it is absolutely clear that the county attorney was corrupted by means of the conspiracy of which the act of which appellant was convicted constituted a part.

The judgment of the lower court is therefore in all things affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.