McCALEB, Justice.
 

 Appellant was charged with and convicted of an aggravated battery upon Betty Jean Willis by shooting her with a pistol for violation of R.S. 14:34 and sentenced to serve seven years at hard labor in the State Penitentiary. During the trial 21 bills of exceptions were reserved by appellant upon which he relies for a reversal of his conviction.
 

 All of the bills relate to two alleged prejudicial errors committed by the judge— (1) in permitting the district attorney to impeach Mrs. Willis, the State’s only eyewitness to the crime, and (2) in admitting certain prior inconsistent statements made by her as proof of appellant’s guilt, despite his timely request that the jury be instructed that this hearsay evidence was receivable only for impeachment purposes.
 

 The facts essential to a proper understanding of appellant’s bills are as follows: On the night of August 26, 1960, while appellant was visiting Mrs. Willis in the living room of her home at Oakdale, Louisiana, she sustained a scalp wound upon being struck in the head by a bullet fired from a pistol belonging to appellant. At the time of the incident Mrs. Willis and appellant were on intimate terms and he frequently called on her at night when she was alone, the visits being made possible by the absence of her husband, appellant’s cousin, who was at work on these occasions. When appellant was released on bond following the filing of the charge herein, he moved to Baton Rouge with Mrs. Willis where they lived together for about two weeks. Her husband contacted her there, and induced her to return to him.
 

 Prior to the time the case was called for trial, Mrs. Willis informed appellant’s counsel that she intended to testify that she shot herself and this information was communicated to the district attorney. Nevertheless, she was placed on the stand as a witness for the State and, when she testified that she shot herself, the district attor
 
 *801
 
 ney sought to lay the foundation for her impeachment, claiming that she was a hostile witness as defined by R.S. 15 :487. To this, defense counsel objected on the ground that the district attorney was not taken by surprise. The objection was overruled and, thereupon, the State questioned Mrs. Willis concerning certain prior inconsistent statements she had made soon after the shooting. She denied having made some of these statements and, as to the others, said that she could not remember. Then the State called to the stand, over defense counsel’s objection, those witnesses (a doctor, police officer, deputy sheriff, her 17-year-old brother-in-law, Walter Willis, Jr. and her husband) to whom the alleged inconsistent statements were made and they testified substantially as appears below.
 
 [1]
 

 The contention of appellant that the judge erred in allowing the State to impeach Mrs. Willis, as the district attorney was not surprised by her testimony, is not tenable. R.S. 15 :487 permits the impeachment of one’s own witness by evidence of prior contradictory statements "if taken by surprise by the testimony of such witness or * * * the witness show hostility toward him”. Therefore, surprise need not be shown where the witness is hostile. State v. Williams, 185 La. 849, 171 So. 52.
 

 Counsel argues that hostility can only be established by the demeanor of the witness on the stand and that no animosity on the part of Mrs. Willis appears in this case. But it is not necessary to show a belligerent or biased attitude in giving testimony in order to prove that a witness is hostile. It suffices to .show that the witness’ interest is on the side of the accused to such an extent that he or she is unlikely to give a true account of the transaction. Here, the hostility of Mrs. Willis to the prosecution is fairly evident from her previous illicit relationship with appellant. State v. Leahy, 175 La. 659, 144 So. 138.
 

 On the other hand, we think it plain that the judge erred in admitting the hearsay testimony of the several witnesses,
 
 *803
 
 who testified as to prior contradictory statements of Mrs. Willis, as evidence of appellant’s guilt and he should have specially instructed the jury to refrain from considering it save for impeachment purposes.
 

 It is a legal principle, well recognized in our jurisprudence, that, when impeaching evidence is received, it becomes the duty of the judge to caution the jury that such evidence should not be considered as proof of defendant’s guilt. State v. Reed, 49 La.Ann. 704, 21 So. 732; State v. Paul, 203 La. 1033, 14 So.2d 826 and State v. Rocco, 222 La. 177, 62 So.2d 265.
 

 The State takes the position in its brief that a cautionary instruction by the judge would have been a comment on the evidence in violation of R.S. 15:384 and also would have required the judge to give piecemeal instructions which would be contrary to the law.
 

 There is no substance in these contentions. In order to minimize the harm which may ensue from the reception of hearsay when used as impeaching evidence, it is necessary to caution the jury as to the limited purpose for which it may be considered before it hears such evidence, rather than to include it later in an instruction which the jury will have to apply in retrospect.
 

 And the statement by the judge of the limited purpose for which impeaching evidence is received is not considered as an objectionable comment on the evidence when made while ruling on the admissibility and effect of testimony and the validity of objections thereto. See State v. Childers, 196 La. 554, 199 So. 640; State v. Walker, 204 La. 523, 15 So.2d 874; State v. Scott, 237 La. 71, 110 So.2d 530 and the many cases there cited and discussed.
 

 The judge in his per curiam states that, if he erred in refusing to warn the jury regarding the purpose for which the impeaching evidence was admitted, such error was not prejudicial to appellant. This statement is evidently founded on the belief of the judge that the impeaching evidence was admissible as proof of the State’s case in chief under the res gestae exception to the hearsay rule. But, other than the statement made by Mrs. Willis to her brother-in-law, Walter Willis, Jr., who arrived at the house immediately after the shooting, the hearsay evidence was clearly not part of the res gestae. R.S. 15:447 defines res gestae as:
 

 “ * * * events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the
 
 *805
 
 words of the participants when narrating the events. * * * ”
 

 To be part of the res gestae the statements must be nearly contemporaneous with the act and the words must be instinctively spontaneous. State v. Labat, 226 La. 201, 75 So.2d 333 and authorities there cited. The person making the statement must not have had an opportunity to fabricate a story. All of the statements attributed to Mrs. Willis in this case, save the one made in the presence of Walter Willis, Jr., to which we have referred above, were made after her admission to the hospital and'in response to questions propounded to her following intervals in which she had an opportunity to assess the consequences of the shooting and concoct a story that she was shot from the outside by someone unknown. In the circumstances, the statements, being neither instinctive nor spontaneous, cannot be regarded as res gestae.
 

 Unlike the trial judge, we are of the opinion that the unqualified admission of hearsay evidence naming the appellant as the guilty party was clearly prejudicial and constitutes reversible error.
 

 The conviction and sentence are set aside and the case is remanded for a new trial.
 

 HAWTHORNE, J., does not participate.
 

 [1]
 

 . Walter Willis, Jr. stated that he arrived at the house soon after the wound was inflicted; that he overheard his sister-in-law say “Huey will kill you, Kirby” and that she told him that appellant shot her.
 

 The doctor testified that he examined Mrs. Willis upon her arrival at the hospital the night she was shot and asked her how she had been injured; that she refused to say but that some time later (two days) she stated that she had been shot by the man (appellant) who brought her to the hospital.
 

 The deputy sheriff and the police officer testified that they questioned Mrs. Willis at the hospital soon after her admission; that she first stated that she had gone to the door to answer a knock and had been shot from the outside by an unknown person and that it was only upon further questioning that she acknowledged that appellant had shot her.
 

 Mrs. Willis’ husband stated that some four days after the occurrence his wife gave him a detailed account of how appellant shot her.