273 So.2d 265 (1973)
STATE of Louisiana, Appellee,
v.
Anthony ROSSI and Neno Nolte, Appellants.
No. 52613.
Supreme Court of Louisiana.
February 19, 1973.
*266 Andrews, Barry & DeSalvo, Dean A. Andrews, Jr., Michael F. Barry, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendants, Rossi and Nolte, were convicted of the crime of theft, La.R.S. 14:67, and each sentenced to eighteen months in the penitentiary. On their appeal they rely upon fifteen bills of exceptions. We find no reversible error.
The contentions of error raised, and the reasons we have rejected them, are as follows:
Bill No. 1: The defendant contends that the State used its peremptory challenges in a discriminatory way to exclude persons of Italian ancestry from serving on the petit jury. However, we have consistently held that the motive for the exercise of peremptory challenges is not subject to judicial review and presents no constitutional issue of abuse. State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).
*267 Bill No. 2: The defendant objected to the testimony of a police officer as to a prior contradictory statement made by a state witness (Madison), which differed somewhat from his testimony on the stand.
The statement, admitted over the objection that it was hearsay, was that Madison had told the policeman when he was investigating the crime, "There goes one [i. e., the defendant Rossi] of the men that was in the car." Tr. 278. This prior extrajudicial statement was introduced to contradict the testimony of the state's witness Madison, at the trial, that Rossi had stood beside the car, but was never seen by him in it.
We should here note that, on the question of guilt or innocence, it was immaterial whether the man identified as Rossi was in the car or beside it.[1] The chief prejudicial effect was that this version of Madison's testimony tended to corroborate the version of the chief prosecution witness (the deliveryman Peters) on this collateral fact (i. e., whether Rossi was in the car or beside it).[2]
The State sought to introduce this hearsay testimony (the prior inconsistent statement), not as evidence of its truth, but only to impeach Madison's credibility. La.R.S. 15:487; State v. Ray, 259 La. 105, 249 So. 2d 540 (1971). Disregarding our serious doubts that either surprise, or hostility on the part of Madison, was shown so as to justify under 15:487 such impeaching testimony, clear error was committed by permitting the police officer to testify as to this statement by Madison, when this witness had himself admitted at the trial that he had made the statement to the policeman (see Tr. 247). La.R.S. 15:493 permits admission of evidence that the prior statement was made only "If the witness does not distinctly admit making such statement."
Normally, the admission of prejudicial hearsay under these circumstances is reversible error. Nevertheless, we have determined that admission of this isolated single inconsistent statement as to a collateral issue, under the present circumstances, should be considered harmless error not cause for reversal. La.C.Cr.P. Art. 921.
The circumstances include: The witness Madison himself had admitted making this prior statement (and no bill was perfected as to Madison's testimony); the issue was relatively minor and entirely collateral to the question of innocence or guilt; only a single isolated statement is involved, not a detailed contradictory version; the totality of the virtually uncontradicted proof shows that Nolte's car and both Nolte and Rossi were at the scene at or near the time that the meat was stolen from the deliveryman Peters and driven away in Nolte's car (identified by license plate and visually) by a man identified by Peters as Nolte, who stole the meat with the assistance of a man identified by Peters as Rossi.
Bills Nos. 3, 7, and 15: By motions for directed verdict and in arrest of judgment the defendants raised certain contentions grounded on the circumstance that the (bill of) information charged the defendants with the theft of property "belonging to one Herman Peters" (i. e., the deliveryman), whereas the evidence showed that *268 the stolen meat belonged not to Peters but to his employer, Schott.
La.R.S. 14:67 defines the crime: "Theft is the misappropriation or taking of anything of value which belongs to another * * *." Proof of the ownership of stolen property is not an essential element of proof of the crime; the state is required only to prove that the property belonged to someone other than the defendant. State v. Morales, 256 La. 940, 240 So. 2d 714 (1970); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); State v. Leierer, 242 La. 961, 140 So.2d 375 (1962). See, e. g., the short-form indictment for theft, La. C.Cr.P. Art. 465, which does not require recital of the ownership of the property taken.
No objection was made on grounds of variance or surprise to proof that the stolen property belonged to Schott, not to Peters as charged. Hence, no question of amendment or continuance is presented.
Pretermitting the procedural validity of the motions relied upon to raise the issue after the state's case was closed and after the conviction, there is no merit to the contentions of error on the ground that the charge incorrectly stated the stolen meat belonged to Peters instead of to his employer Schott, a variance immaterial to proof of the crime.
Bills Nos. 4 and 6: Bill No. 4 was reserved when the trial court permitted the state to cross-examine a defense witness as to prior convictions. The sole ground of this objection stated at the trial was that the convictions, being in 1961 and prior thereto, were "very, very remote". (Although in brief the defendants have sought to expand this objection to include another ground based upon a matter referred to in one of the later questions on the subject of prior convictions, no objection on such ground was made at the time, so this particular irregularity cannot be complained of after conviction. La.C.Cr.P. Art. 841.)
Bill No. 6 was reserved to the failure of the trial court to let the defendant Rossi explain his convictions in 1943, 1951, and 1961 out of the presence of the jury. The intention was to show that these prior convictions did not bear upon Rossi's veracity nor did they involve convictions of crimes similar to theft, with a view to preventing the district attorney from questioning Rossi as to them if he took the stand.[3]
The trial court did not commit error. La.R.S. 15:495 permits such cross-examination as to conviction of other crimes, for the sole purpose of impeaching the credibility of the witness. The Louisiana jurisprudence does not now interpret this statute as limiting such impeachment testimony to recent crimes, nor to crimes indicative of the credibility of the witness or of the testifying defendant.
Bill No. 5: Upon re-direct examination of the defense witness whose credibility was impeached by cross-examination as to conviction of other crimes, the defendants' counsel attempted to rehabilitate this witness by showing his good conduct and community service in the years since the last conviction in 1961. After several questions of this nature were asked and answered, the defendants' counsel asked the witness: "Have you been interviewed by any of the television stations here locally?" The bill was taken to the trial court's upholding an objection to this question as irrelevant.
Considering the extensive testimony on direct examination as to the defendant's good works, as well as the cumulative testimony of this nature permitted on redirect prior to the objection, we find no abuse of the trial court's discretion in terminating further questioning along this line. (We thus pretermit consideration of whether such testimony was relevant to the issue of rehabilitating credibility after the impeachment on cross-examination, La.R.S. 15:441, 442, or of whether it was beyond *269 the scope of re-direct examination, La.R.S. 15:281.)
Bills Nos. 8, 9, and 10: These were directed at allegedly improper comments made by the prosecuting attorney during his closing argument. They were objected to as prejudicial comments beyond the scope of comment on the evidence. See La.C.Cr.P. Art. 774.
In each instance, one or both of the defendants' counsel moved for a mistrial. In denying the motions, the trial judge instructed the jury that it was the sole judge of the facts and of whether the state had proved its case beyond a reasonable doubt. The cautionary instructions further indicated that the lawyers' arguments constituted only comment on the evidence as they appreciated it. In the third instance, where one of the defendants had simply objected to the prejudicial nature of the remarks (without moving for a mistrial), the trial court additionally instructed the jurors to disregard the statement made by the district attorney.
The trial court did not err in denying a mistrial. The allegedly prejudicial remarks did not fall within the scope of La.C. Cr.P. Art. 770, requiring mistrial in certain instances. When requested, the trial court properly admonished the jury to disregard the objected-to comment. La.C. Cr.P. Art. 771. Under all the circumstances, we feel the trial court's admonitions to the jury were sufficient and that any prejudice caused by the remarks was not sufficient to require granting a mistrial, in view of the trial court's admonitions. La.C.Cr.P. Art. 771.
Bills Nos. 11 and 12: These were taken as to the trial court's refusal to give certain special instructions requested by the defendants. The trial court correctly refused to give one, as unjustified by law, and the other, as adequately covered by the general charge.
Bills Nos. 13 and 14: These were taken as to the trial court's denial of motions for a new trial. The grounds for these were, except one, based on the issues raised by the previous bills and were properly rejected for the reasons previously noted.
The only new ground concerned allegedly newly discovered evidence. The trial court rejected it, since it was of a nature that by reasonable diligence should have been produced before or during the trial. La.C.Cr.P. Art. 851(3).
We find no error in the court's ruling.

Decree
For the reasons noted, the convictions and sentences are affirmed.
Affirmed.
TATE, J., also appends additional concurring reasons.
BARHAM, J., dissents finding reversible error under Bill of Exceptions No. 2.
TATE, Justice (concurring).
Bill of Exceptions No. 2 concurns the State's use of a prior inconsistent statement given by the State's witness to a police officer. The witness testified somewhat differently on the stand than the version in the statement.
Under La.R.S. 15:487, no one can impeach his own witness except in the event he is surprised by the testimony of such witness "or unless the witness show hostility toward him". The defendants correctly argued, in my opinion, that the state showed neither surprise nor hostility, so such hearsay testimony was improperly admitted.
We have long recognized that such prior inconsistent statements are admissible only on the issue of credibility of the witness and not as substantive evidence of the defendant's guilt. Further, so prejudicial are the possibilities of misuse of such extrajudicial *270 statements, we have until recently regarded their admission as reversible error if the judge does not, sua sponte, caution the jury, at the time of the introduction of the testimony, as to the limited purpose of its introduction. State v. Barbar, 250 La. 509, 197 So.2d 69 (1967). (In State v. Ray, 259 La. 105, 249 So.2d 540 (1971), we prospectively overruled the stringency of this rule and required that, before the failure to caution could be considered reversible error, the defendant must have first requested the trial judge for the instruction.)
In the present instance, the witness Huey Madison had testified at an earlier trial of these same two defendants, which had ended in a mistrial. The testimony at this earlier trial was the same at the present trial. The state was definitely not surprised by the testimony.
The apparent basis upon which the testimony is sought to be introduced is that the witness is hostile, because he did not testify as the state wished. The reason for this concurring opinion is to question the isolated decisions holding that, in Louisiana, a party may impeach its own witness on the ground of hostility, even where it knows in advance that the witness will testify as he does at the trial.
The general American rule is that a party may impeach by prior inconsistent statements its own hostile witness only when taken by surprise by the adverse testimony. 2. C.Torcia, Wharton's Criminal Evidence, Section 845 (13th ed. 1972); 1 Underhill's Criminal Evidence, Section 232 (5th ed., 1956). However, by reason of our statutory provision permitting such impeachment in event of surprise or hostility, it has been held that in Louisiana a party is permitted to impeach its own witness, if hostile, even though not surprised. State v. Ray, 259 La. 105, 249 So.2d 540 (1971); State v. Willis, 241 La. 796, 131 So.2d 792 (1961); State v. Williams, 185 La. 849, 171 So. 52 (1936).
However, the convictions were reversed in the Ray and Willis cases because of the admission of the prior inconsistent statements without the cautionary instruction; the remarks there expressed reaffirming the Louisiana exception to the national rule are thus dicta. The 1936 Williams case alone supports the rule.
Since the sole purpose of admitting prior inconsistent statements is to test the credibility of the witness, it is fundamentally illogical to permit a party to call a hostile witness to testify to a statement, for the sole purpose of impeaching the credibility of that expectedly hostile witness by showing some prior inconsistent statement. The apparent reason for calling the witness or questioning him on the subject of the prior statement must be to get before the jury such prior inconsistent statement, with its obviously prejudicial effect on the issue of the substantive guilt or innocence.
A party should not be able to call a witness to evoke a statement which the party intends to dispute by the prior statement, for the sole purpose of getting before a jury inadmissible hearsay testimony (ostensibly offered only to prove that the witness is lying as indeed the party who called him knew in advance he would). See Pugh, 22 La.L.Rev. 397-398 (1962).
As Judge Hutcheson long ago stated in the leading case of Young v. United States, 97 F.2d 200, 117 A.L.R. 316, 324 (1938):
"It is, in our opinion, never admissible under any sound interpretation of the rule ... to offer a witness whose testimony the offerer knows in advance will be adverse, in order to get before the jury, in the form of impeachment, contradictory statements of his which are useful to the prosecutor.... In no event may the fact that a witness has made contradictory statements be used as it in effect was here, as a basis for completely discarding the rules of evidence against hearsay and ex parte statements, and, as impeachment, opening the flood gates of prejudicial and damaging hearsay."
When the question is squarely presented, it is the writer's belief that this issue should *271 be re-examined by this court. Also, it may well be that the standard of "hostility" for a party's own witness, to justify impeachment by prior contradictory statements, should be much more carefully examined and strictly limited to situations where some intrinsic bias in favor of the defendant and antagonistic to the state's case must first be shown, such as a devoted wife called as a witness against her husband. The state's simple declaration that the witness is "hostile" since unwilling to testify as the state wishes should not suffice.
NOTES
[1] The theft occurred when a deliveryman (Peters) was told by the driver of a Pontiac to place a $35.47 order of ham and bacon in the back of his automobile, which was leaving a parking lot. The driver, identified as the defendant Nolte, had pretended that the order was for them (it was really intended for an establishment next door to the parking garage), while the other man (identified as the defendant Rossi) had pulled the seat back in order for the deliveryman to place the meat in the car. The car drove off, and the meat was never seen again.
[2] Madison, who was a parking lot attendant, testified in chief that he saw Rossi standing beside the car, but that he did not know whether Rossi had later gotten in the car or not, since he was very busy parking cars.
[3] When the motion was denied, Rossi did not take the stand.