275 So.2d 762 (1973)
STATE of Louisiana
v.
Dolph FINLEY, Jr.
No. 52957.
Supreme Court of Louisiana.
March 8, 1973.
Rehearing Denied April 19, 1973.
Woodson T. Callihan, Jr., Public Defender, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., M. Stephen Roberts, Asst. Dist. Atty., for appellee.
PER CURIAM.
Defendant, Dolph Finley, Jr., was tried by jury and convicted of the crime of armed robbery, and sentenced to thirty (30) years in the state penitentiary. La.R.S. 14:64. The defendant reserved twenty bills of exceptions during the proceedings, however, only eleven have been argued in brief, the remaining apparently abandoned on this appeal. The bills are grouped into three categories.
Prior to trial defense counsel filed a Motion and Prayer for Oyer in which he sought to have the state "furnish him copies of all photographs and other photographic evidence as well as copies of all written confessions, written statements, and any other written, tape-recorded or videotaped statements allegedly made by the defendant herein." The trial court granted the motion insofar as to require the state to furnish the defense counsel with any written statements, or oral or written confessions. *763 Other than that, the rest of the motion was denied. Bill of Exceptions No. 1 was reserved to this denial.
This Court has repeatedly held that full pretrial discovery is unavailable in Louisiana criminal proceedings. State v. Burkhalter, 260 La. 27, 255 So.2d 63 (1971) and the cases cited therein. Specifically, this Court held in State v. Dickson, 248 La. 500, 180 So.2d 403, 404 (1965) that "* * * motion pictures and recording(s) were direct evidence of the commission of the crime and the accused was not entitled to a pretrial examination of them. . ."
The ruling of the trial court is correct. This bill lacks merit.
Bills of Exceptions Nos. 2, 3, 16 and 17 were reserved during the examination of Lillie Mae Pullet Griffin and Lt. George O'Connor.
Subsequent to the robbery of the Baton Rouge bank on June 7, 1971, one of the robbers was photographed in the bank by an instrument designed for that purpose. Photographs of the robber were broadcast on the Baton Rouge television stations. On June 8, 1971, Mrs. Griffin called the sheriff's office and identified the robber she had seen on television as Dolph Finley, Jr., who had been raised with Mrs. Griffin's children in another town, Lettsworth. The following day, June 9, Mrs. Griffin signed a statement in the office of the sheriff. In that statement, which was read to the jury, Mrs. Griffin identified Dolph Finley, Jr. as the one appearing in the photograph.
Shortly before the trial, Mrs. Griffin called the district attorney's office and informed an assistant district attorney of her reluctance to testify, since she was unsure of the identification, and since one of her daughters had advised her not to become involved in other people's troubles.
When Mrs. Griffin was called by the State she did not volunteer any information. When the assistant district attorney asked leading questions, Mrs. Griffin was careful not to admit that she had called the police, and would not answer the leading questions as the district attorney asked them.
Nevertheless, Mrs. Griffin testified that she knew Dolph Finley, Jr. and that she told the police that she knew him; that she was watching the news broadcast and saw the pictures of the bank robber. She admitted signing the statement prepared by the police, but claimed she didn't know what was in the statement and that she didn't read the statement because she didn't have her glasses.
From time to time during the cross-examination, Mrs. Griffin tended to cast some doubt on her own identification of the television picture of the robber, again because she didn't have her glasses. Nevertheless, in the courtroom she identified one of the pictures taken of Dolph Finley, Jr. at the time of the robbery, and admitted having told Deputy O'Connor that that picture looked like Dolph Finley. She finally admitted having seen the photograph of Dolph Finley on the day the police interviewed her, and identifying it as Dolph Finley.
During Mrs. Griffin's testimony, the assistant district attorney announced that he intended to "impeach" her. Objection was made to this procedure and a bill was reserved.
The assistant district attorney was confused in his attempt to sustain his method of examining the witness Griffin. At this stage, he was not engaged in "impeaching"; he was not surprised at the reluctance of the witness to testify. See R.S. 15:487, 15:488.
However, it is clear that the witness Griffin was at least unwilling, if not hostile to the prosecution. In such event, the law clearly provides that the examiner may propound leading questions to his witness. R.S. 15:277 provides:
"A leading question is one which suggests to the witness the answer he is to *764 deliver, and though framed in the alternative, is inadmissible when propounded to one's own witness, unless such witness be unwilling or hostile."
There was no error in the judge's ruling to the objection which formed the basis of Bills of Exceptions Nos. 2 and 3.
Bills of Exceptions Nos. 16 and 17 were taken to the overruling of certain objections during the testimony of Lt. George O'Connor.
The first objection came when the officer was asked how he became involved in the investigation, and began to testify about a call from Mrs. Griffin on June 8. The defense objected to O'Connor's testifying to hearsay. The State argued that it intended to impeach the testimony of Mrs. Griffin with prior inconsistent statements. The defense requested an appropriate jury instruction. The court then instructed the jury that any prior contradictory statement made by the witness should not be received by the jury as evidence against the accused, but only as it affected the credibility of the witness who made the prior inconsistent statements.
After the jury received this warning, Lt. O'Connor was allowed to testify in detail concerning his telephone conversation with Mrs. Griffin and concerning the statement he took from her.
The testimony of Lt. O'Connor concerning what he had been told by Mrs. Griffin was inadmissible hearsay. Except for small details, Mrs. Griffin had admitted identifying Dolph Finley, Jr. to Lt. O'Connor June 8 and 9. Although she denied initiating the call to Lt. O'Connor, she could only be impeached as to prior contradictory statements.
Mrs. Griffin denied making the statement which she signed in the form in which it was written. Lt. O'Connor made no pretense that he had attempted to use the same words and phrases as Mrs. Griffin, but had written down the import of her statement to him.
Nevertheless, the admission of this hearsay testimony does not constitute reversible error. Nor do we find the defendant was prejudiced by the inappropriate attempt at impeachment. The witness was not impeached on the only point relevant to the guilt or innocence of the accusedthat is, the identification of Dolph Finley, Jr., as the bank robber, an identification which she made before the jury on her direct examination.
These bills of exceptions are lacking in merit.
The remaining bills of exceptions perfected by the defendant, Bills Nos. 4, 7-14 and 18 all pertain to the defendant's objection to the introduction of certain evidence on the ground that it was the fruit of an unconstitutional search and seizure.
Notwithstanding the defendant's waiver of his right to assert his objections to the introduction of the evidence by virtue of his failure to have filed a motion to suppress prior to the trial, La.C.Cr.P. art. 703, State v. Cryer and Seay, 262 La. 575, 263 So.2d 895, 900 (1972) and the cases cited therein, we have considered the substance of the defendant's allegations and found them to be without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., dissents and assigns reasons.
BAKER, J., dissents for reasons assigned by TATE, J.
TATE, Justice (dissenting).
The majority writes a persuasive opinion. Nevertheless, I can only believe that the error of the trial court in permitting proof by Officer O'Connor of the prior inconsistent statement of the witness Mrs. *765 Griffin, admittedly inadmissible hearsay, constituted prejudicial testimony violative of the substantial right of the accused. It is thus reversible error. Cf., La.C.Cr.P. art. 921.
Also, I am inclined to believe that the calling of Mrs. Griffin as a witness by the state, with the principal purpose of impeaching her testimony on the stand by such prior contradictory statement, did not justify the state impeaching its own witness by proof of such prior inconsistent statement. See the classic statement of the reasons forbidding such tactics in Young v. United States, 97 F.2d 201, 205 (CA 5, 1938) (Judge Hutcheson, author of the opinion).
To do so, permitted the state by indirection to do what is prohibited by La.R.S. 15:487: "No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements." If so, examination of this state witness by the state as to her prior contradictory statement likewise constituted reversible error.
The general American rule is that a party may impeach by prior inconsistent statements its own hostile witness only when taken by surprise by the adverse testimony. 2. C. Torcia, Wharton's Criminal Evidence, Section 845 (13th ed. 1972); 1 Underhill's Criminal Evidence, Section 232 (5th ed. 1956). However, by reason of our statutory provision permitting impeachment of one's own witness in event of surprise or hostility, La.R.S. 15:487, it has been held that in Louisiana a party is permitted to impeach its own witness, if hostile, even though not surprised. State v. Ray, 259 La. 105, 249 So.2d 540 (1971); State v. Willis, 241 La. 796, 131 So.2d 792 (1961); State v. Williams, 185 La. 849, 171 So. 52 (1936).
However, the mere fact that a witness does not wish to testify as the party calling her wishes does not make the witness hostile. Hostility must be shown by an interest on the side of the opposing party to such an extent that the witness is unlikely to give a true account of the transaction. State v. Willis, 241 La. 796, 131 So.2d 792 (1961); 22 La.L.Rev. 399-400 (1962). No such showing was here made. It is also uncontradicted that in advance of the trial the state knew that the witness was unwilling to testify as the state wishedthere is here no claim of surprise.
For these reasons, and conceding that the majority has made a persuasive statement of the views to the contrary, I respectfully dissent.