MARCUS, Justice.
The Grand Jury for the Parish of Pointe Coupee indicted defendant for the murder of his wife. Trial by a jury resulted in a verdict of manslaughter. Defendant was sentenced to serve twenty years at hard labor. He has appealed his conviction and sentence to this Court.
During the course of the trial, fourteen bills of exceptions were reserved. Only two have been briefed; therefore, the remaining bills are considered abandoned. State v. Edwards, 261 La. 1014, 261 So.2d 649 (1972). The two bills presented for consideration, Nos. 7 and 10, pose the same issue of law.
The evidence established that the defendant shot his wife in their home during the early morning hours of January 3, 1971. Mrs. Lacour died from a single bullet wound to her chest fired from a high-powered hunting rifle. Among the witnesses called by the State to prove that the defendant shot his wife were the foster children of the deceased and the defendant. All of the children were present in the house when the fatal shot was fired. It was during the examination of two of these children, Gwendolyn Paul, age thirteen, and Laquittia Paul, age eleven, that Bills of Exceptions Nos. 7 and 10 were reserved.
The question presented by these bills is whether the State should have been allowed to impeach its own witnesses under the circumstances presented.
Bill of Exceptions No. 7 was reserved in connection with the testimony of Gwendolyn Paul. When testifying, she was asked as to her recollection of the events which occurred on the night of the shooting. Her complete testimony is not attached to this bill. However, it is evident from that portion which is contained in the record that her testimony was that she did not recall what occurred after the shooting. Particularly, she did not recall what her foster father had said or whether he had left and returned to the house. The State pleaded surprise and sought to impeach her testimony. It contended that the testimony of Gwendolyn Paul at trial was contrary to *760 her prior statement given to the police and her testimony at the preliminary hearing. The assistant district attorney then proceeded to ask the witness whether she remembered making the prior statement to the police and testifying at the preliminary hearing. This included reference to the time, place and circumstances and to whom the statement was given and before whom the testimony was taken. The witness answered in the affirmative. A review of the testimony of Gwendolyn .Paul taken at the preliminary hearing clearly shows a contradiction between this testimony and her testimony at trial. At the preliminary hearing, she stated that her foster father said after the shooting, “I done killed me a woman” and that he had left the house after the shooting and returned five minutes later.
The applicable statutory provisions are as follows:
R.S. 15:487
“No one can impeach his own witness, unless he have been taken by surprise by the testimony of such witness, or unless the witness show hostility toward him, and, even then, the impeachment must be limited to evidence of prior contradictory statements.”
R.S. 15:488
“ ‘Surprise’ in the sense of the last preceding article does not arise out of the mere failure of the witness to testify as expected, but out of his testifying upon some material matter against the party introducing him and in favor of the other side.”
R.S. 15:493
“Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible.”
Article 295 C.Cr.P.
***** *
“The transcript of testimony given by a person at a preliminary examination may be used by any party in a subsequent judicial proceeding for the purpose of impeaching or contradicting the testimony of such person as a witness.”
We are satisfied that a proper foundation for proof of the contradictory statements was laid in accordance with R.S. 15:493. We find that the State was properly allowed to impeach its own witness since it was taken by surprise in that Gwendolyn Paul’s testimony at trial was clearly contrary to her previous testimony on a material matter “against the party introducing him [her] and in favor of the other side.” Furthermore, the State had no reason to believe that the testimony of this witness at trial would be contrary to her prior statement and testimony. R.S. 15:487, R.S. 15:488 and Article 295 C.Cr.P.
In State v. Grey, 257 La. 1070, 245 So.2d 178 (1971), we stated:
“The trial judge concluded that the testimony constituted surprise and that the witness was hostile. The evidence attached to the bill shows that in the impeachment examination the witness admitted he had previously made a contrary statement, in the presence of two law officers, to the assistant district attorney who was prosecuting the case. In the light of the witness’s earlier statement that the two Grey boys participated in the burglary with him, his testimony before the jury that they were not present clearly constituted surprise upon a material matter ‘against the party introducing him and in favor of the other side.’ State v. Ray, 259 La. 105, 249 *761 So.2d 540, decided Jan. 18, 1971; State v. Willis, 241 La. 796, 131 So.2d 792; State v. Smith, 193 La. 706, 192 So. 106; State v. Williams, 185 La. 849, 171 So. 52. The judge’s ruling was correct.”
Hence, we find no error in the trial judge’s ruling which allowed the State to proceed in the questioning of this witness in reference to her prior inconsistent statements.
Therefore, this bill is without merit.
Bill of Exceptions No. 10 is generally similar to the issue presented in the previous bill. The witness, Laquittia Paul, sister of the prior witness and foster daughter of the defendant and victim, testified concerning her recollection of the events on the night of the shooting. When questioned by the State as to her recollection of what took place after the shooting, she responded that she had not seen or heard anything. Her testimony at the preliminary hearing was completely to the contrary. Consequently, the issue of law presented here is identical with that discussed in Bill of Exceptions No. 7. For the same reasons there stated, we find no merit in this bill.
For the reasons assigned, the conviction and sentence are affirmed.
BARHAM, J., concurs with reasons.
DIXON, J., concurs.