SUMMERS, Justice.
A bill of information filed by the District Attorney of East Baton Rouge Parish charged that John C. Gibbs and Larry B. Cobb knowingly and intentionally distributed marijuana. La.R.S. 40:966 A. Gibbs turned state’s evidence. Cobb was tried, found guilty and sentenced to serve three years imprisonment at hard labor.
At the trial Cobb, a black man, was identified by Gibbs and Carmen Dufrene as the person who sold marijuana to Dufrene, an undercover police woman *201 posing as a student. Although Cobb was not a student, the transaction occurred in the vicinity of Tara High School on a school day just before the beginning of class.
I.
In brief defense counsel sets forth that during the selection of prospective jurors Vicky A. Foelsch was called for voir dire examination. The prospective juror examined immediately before Foelsch indicated that he might not agree that the statute for the offense charged was fair, and he was excused. Foelsch was then examined by the trial judge:
“Q. How about you?
A. (MS. FOELSCH) I think the penalty is a little stiff for this situation.
Q. Now, let me explain to you this, first of all, the function of the jury in a case like this is to determine what the facts are, and their verdict must be based on the testimony and the evidence without regard to what the possible penalties are.
A. (MS. FOELSCH) Uh-huh.
Q. And if the possible maximum penalty is too stiff, then the question arises, notwithstanding the fact that you may feel or disagree with that portion of the law, the penalty, maximum penalty is too stiff, could you apply the law, and if you’re convinced beyond a reasonable doubt that the man has been proved guilty could you return the verdict of guilty? In other words, would your disagreement with the penalty portion of this law affect your judgment on guilt or innocence?
A. (MS. FOELSCH) In other words, keep me from me from saying the man is guilty because—
Q. Right.
A. (MS FOELSCH) Well, really, you know, like I said, I think it is fairly stiff and I don’t know that I could, knowing that in the back of my mind, could actually say guilty.
Q. Well, you understand that the legislature has placed the burden and the duty upon the Court—
A. (MS. FOELSCH) Yes, uh-huh.
Q. —to impose a suitable sentence within the limits of zero to ten years at hard labor, you understand that?
A. (MS. FOELSCH) Yes, I understand that.
Q. You nevertheless still feel that it could affect your judgment in this case?
A. (MS. FOELSCH) Yes, it could.
MR. ¡SINQUEFIELD (Assistant District Attorney): Again, Judge, I’ll challenge for cause.
Q. To put it another way, even though he’s guilty, you don’t want' to expose him to up to ten years at hard labor, is that right? (underling added).
A. (MS. FOELSCH) Yes, Sir.
Q. You’d rather he go free?
A. (MS. FOELSCH) I guess so.
THE COURT: All right, we’ll excuse you, too. You won’t have to come back. Thank you. Take your subpoena down.”
According to the defense the underlined question by the trial judge was an expression in the presence of the jury venire that he felt the defendant was guilty. Conceding that the remark was not intended to have that effect, defense counsel never *202 theless argues that the remark “even though he’s guilty” comes within the prohibition that “[t]he judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.” La.Code Crim.Pro. art. 772. Cf. La.Code Crim.Pro. art. 806.
After defense counsel moved to quash the jury because of the question, the judge admonished the jury in this manner:
“THE COURT: All right, I want to remind you ladies and gentlemen right before we recessed we were talking about, the lady who thought that the harshness of the penalty was such that it could influence her judgment as to guilt or innocence, I want you to understand that any remark that I might make, or did make, or any remarks made by the prosecutor, or even by the defense attorney, in propounding such line of questioning, it is not meant to infer that I think or believe this accused is guilty of the charge, or that anyone else thinks he’s guilty of the charge. The questions are propounded to see whether or not you can dispassionately judge the evidence and weigh the evidence and determine whether the State has, in fact, carried its burden of proof to prove the guilt of the accused to the jury’s satisfaction and beyond a reasonable doubt. The accused in this case enjoys the legal presumption of innocence guaranteed by the United States Constitution, and the Louisiana constitution, and you must afford him that legal presumption of innocence and require that the State does carry its burden of proof to establish beyond a reasonable doubt to your satisfaction that he has been proved guilty before you can vote to convict.”
In our opinion the trial judge was saying that in a hypothetical situation, if a defendant were guilty, he understood that the prospective juror, Ms. Foelsch, would not want to .expose him to imprisonment for ten years. We believe, moreover, that the prospective jurors who may have heard the remark and who were chosen did not consider the judge’s question as an expression of opinion by him that defendant was guilty of the charge on which he was to be tried. Its effect upon Ms. Foelsch is immaterial because she was excused for cause.
The phrase “even though he’s guilty” taken in the context of the voir dire examination is a reference to an assumed person, used to- make the question clear. The same is true of a previous question in which the judge used the phrase, “and if you’re convinced beyond a reasonable doubt that the man has been proved guilty.” There the reference to “the man” was not a reference to the defendant, but to an assumed and mythical person used in the interrogation to make clear the judge’s inquiry into the prospective juror’s attitude toward the law.
The judge’s question could have and should have been couched in different words, and any expression of opinion by the judge during a jury trial that a defendant is guilty must be condemned. But a chance, inartfully worded remark, the meaning of which, taken in context, does not amount to an expression of opinion of the trial judge touching upon the defendant’s guilt, will not serve as a basis for upsetting a guilty verdict. State v. Farrier, 114 La. 579, 38 So. 460 (1905); State v. Walker, 50 La.Ann. 420, 23 So. 967 (1898); State v. Alphonse, 34 La.Ann. 9 (1882).
“It is our bounden duty to see that the accused suffers no injury at the hands of the court, but it is also our duty in the administration of justice to see that parties found guilty of crime by the verdict of a jury concurred in by the trial judge should not escape punishment by *203 reason of harmless and unimportant errors committed in the course of the trial.” State v. Farrier, supra, 38 So. at 463.
II.
Carmen Dufrene, the undercover agent, posing as a student at Tara High School, was the State’s principal witness. She testified that she purchased one pack of marijuana from Cobb. On direct examination she was positive in her identification of Cobb, having met him on the occasion when she purchased the marijuana. At that time she conversed with him face to face and had ample opportunity to observe him thoroughly. She had seen him on various other occasions on the school grounds thereafter. Her identification was steadfast.
In his effort to weaken the evidence of identification, defense counsel, in his opening statement and in questioning, adopted the theory that Cobb was not the person present at the marijuana transaction, the offender being another black person. To support this theory he sought to establish by testimony elicited during the cross-examination of agent Dufrene that white persons (here Agent Dufrene) have difficulty distinguishing between blacks. This unfamiliarity with the varying physical characteristics of black people, the theory infers, is due to the condition of a segregated society in which white persons do not generally associate with large numbers of blacks. Defense counsel also questioned Agent Dufrene about her ability to distinguish between blacks and orientals.
On re-direct examination of Agent Du-frene, the following pertinent part of the exchange occurred:
“Q Ms. Dufrene, did you ever have occasion after this day of January 30th to have a conversation with Mr. Larry Cobb?
A Yes, sir.
Q How long after, to the best of your recollection? You don’t have -to give us the exact date.
A About four days after.
Q What was that — tell me, was that face to face conversation?
A Yes, sir.
Q What was that about?
A It was very commonly known that the white, some of the white girls at school were going out with Larry—
MR. SIMMONS: I beg your pardon, I didn’t catch that, Your Honor.
Q Okay, just tell me about the conversation.
A Larry asked me to go out on a date.
Q Okay, did he ask anybody else in your presence?
MR. SIMMONS: I’m going to object to that, Your Honor, I don’t think it’s relevant.
MR. SINQUEFIELD: Judge, after he’s done been all through this with this witness about how she knows him, John Gibbs, he’s going to object to relevancy. It goes to the identity.
THE COURT: All right, objection overruled.
MR. SIMMONS: We’ll assign error.
Q Okay, did he ask anybody else out?
A He asked Sherry Bernard before he asked me.
Q Okay, were you with Sherry Bernard?
A Yes, sir.
Q Okay, how far away from him was you when this conversation took place?
*204 A He was standing right in front of me.
Q Was this the same person that had given John Gibbs the marijuana just several days before?
A Yes, sir.
Q That you bought?
A Yes, sir.
Q Okay, and you recognized him then, is that correct?
A Yes, sir.
Q And you recognize him now?
A Yes, sir.”
Two assignments of error (3 and 6) are based upon the defense contention that the response by the state witness, “It was very commonly known that the white, some of the white girls at school were going out with Larry — ,” was unnecessary, immaterial and highly prejudicial to this black defendant before a jury composed of eleven whites and one black, a prejudice defendant could not overcome.
Article 771 of the Code of Criminal Procedure requires an admonition, on defendant’s request, when a remark or comment is made by a witness which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant in the minds of the jury. A mistrial is authorized by this article if the Court is satisfied that an admonition is not sufficient to assure the defendant a fair trial. It is the defense position that the trial judge should have admonished the jury when Agent Dufrene referred to the fact that white girls were going out with Cobb.
There are two reasons why the defense contention cannot be sustained. First, the reference to race was not objected to by the defense and no admonition was requested. And, second, the redirect-examination by the State resulting in the indirect reference to race was non-prejudicial because the subject matter of race had been repeatedly brought out by the defense on the issue of identification.
As a great number of our decisions hold, and as Article 841 of the Code of Criminal Procedure emphatically directs, “An irregularity or error . . . cannot be availed of after verdict unless it was objected to- at the time of its occurrence . . ” See also State v. Marcell, 320 So.2d 195 (La.1975); State v. Forbes, 310 So.2d 569 (La.1975); State v. Craddock, 307 So.2d 342 (La.1975); State v. Rossi, 273 So.2d 265 (La.1973).
A reading of the quoted portion of the redirect-examination by the State discloses that when Agent Dufrene mentioned that it was commonly known that white girls at the school were going out with Cobb, no defense objection was made. The examination continued. When asked about her conversation with Cobb, Agent Dufrene replied that he asked her for a date. Still no objection was made. Then, when Du-frene was asked whether Cobb asked anyone else (for a date) in her presence, defense counsel objected on the ground that this last question was not relevant. This objection was overruled and the interrogation continued without any further reference to race.
As this Court explained in State v. Mar-cell, supra,
“The contemporaneous objection rule, as embodied in Article 841 of the . Code of Criminal Procedure, is necessary in order to promote judicial efficiency and in order to prevent a defendant from gambling for a favorable verdict and then, upon conviction, resorting to appeal on errors that might easily have been corrected by objection at trial.”
It should be added at this time that the objection cannot be left to speculation, conjecture or implausible inferences. It *205 should be plainly stated and the grounds for the objection should be made known at that time.
In addition to the fact that no contemporaneous defense objection was entered to the remark complained of, there was no request by the defendant that the jury be admonished by the trial judge. Article 771, which imposes upon the party objecting to the witness’ remark the obligation to request an admonition, has not been complied with.
The lack of merit to the defense contentions on these two assignments of error is principally found in the failure of the defense to voice a contemporaneous objection and the failure to request that the trial judge admonish the jury. However, defense counsel made repeated references to race during the trial, and during closing argument to the jury he again referred to Agent Dufrene’s testimony relating to Cobb dating white girls. Such a defense attitude dispels any claim that prejudice occurred attributable to the State as the result of one isolated indirect reference to race by a state witness.
These assignments of error are without merit.
For the reasons assigned, the conviction and sentence are affirmed.